# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **COURTNI BUTLER and KRISTY RENEMAN,** Individually and on behalf of all others similarly situated<br><br>*Plaintiff,*<br><br>v.<br><br>**EVERNEST HOLDINGS, LLC d/b/a EVERNEST, LLC.**<br><br>*Defendant.* | § § § § § § § § § § § § § § | Civil Action No. 2:24-cv-00673-ACA<br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT

Courtni Butler and Kristy Reneman (collectively "Plaintiffs") move this Court to approve the Settlement Agreement and Release of Claims ("Agreement")[1] entered into between Plaintiffs and Defendant Evernest Holdings, LLC d/b/a Evernest, LLC ("Defendant" or "Evernest"). Plaintiff respectfully submits that the terms of the settlement are fair, reasonable, and resolve a *bona fide* dispute between the parties with respect to liability and damages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19 and the Equal Pay Act of 1963 ("EPA").

---

[1] The Agreement is attached as Exhibit 1 to this Motion.

*Plaintiffs' Unopposed Motion for Approval of FLSA Settlement*                                        Page 1

## I.     Relevant Background Information

Plaintiffs filed suit against Defendant on May 24, 2024, alleging violations of the FLSA and the EPA. *See* ECF No. 1. Plaintiffs alleged that Defendant violated the FLSA by (mis)classifying them and other similarly situated employees as exempt from the protections of the FLSA. Defendant filed its answer on July 19, 2024, and asserted numerous defenses (and affirmative defenses) to liability. *See* ECF No. 11. The Parties participated in their Rule 26(f) conference on August 15, 2024, and filed their Report on September 5, 2024. *See* ECF No. 23. As highlighted in the Report, the Parties disagreed regarding the scope of discovery and the ability to conduct representative discovery. *Id.* These issues later came to a head when Defendant noticed, and Plaintiffs sought to quash, the depositions of Plaintiffs and the written discovery to the three Opt-In Plaintiffs. *See* ECF No. 24. The Parties ultimately reached an agreement regarding discovery and Plaintiffs and Opt-In Plaintiffs responded to written discovery and provided deposition testimony in support of their claims.

Plaintiffs moved for conditional certification of a collective action on December 24, 2024. *See* ECF No. 48. After a hearing on the merits of Plaintiffs' Motion, the Court granted in part and denied in part the motion. *See* ECF No. 55. Before the Court's approval of the notice and before sending notice to the putative collective members, the Parties sought to stay this action in an attempt to reach a resolution. *See* ECF No. 63. After multiple exchanges of demands and counter offers, the Parties reached an

agreement in principle. The Parties then worked collaboratively to draft the full Agreement before this Court.

## II.  Terms of Agreement

### A.  Gross Settlement Amount

The Gross Settlement Amount is $35,000.00, which includes the individual settlement payments to be made to Plaintiffs and Opt-In Plaintiffs ("Settlement Members") and attorneys' fees and litigation expenses. *See* Exhibit 1, ¶ I.L.

### B.  Individual Settlement Payments

The Settlement Members are each receiving a set sum for the resolution of this matter. Those sums are set out in Exhibit B to the Agreement and have been approved by each Settlement Member.  The settlement amounts will be allocated fifty percent (50%) to back wages (paid via an IRS Form W-2) and fifty percent (50%) to liquidated damages (paid via IRS Form 1099). Id. at ¶ 2.5.3.

### C.  Attorneys' Fees and Costs

Subject to Court approval, Defendant will pay up to 40% of the Gross Settlement Amount—that is, $14,000.00—to Collective Counsel for attorneys' fees and $9,602.47 in costs incurred to date. *Id.* at ¶ III.B.ii.

### D.  Release of Claims

The Settlement Members have agreed to a limited release of their claims against Evernest, the full text of which is included below:

"Released Collective Claims" means all claims, rights, demands, liabilities and causes of action, whether known or unknown, relating to the facts and claims asserted in the Lawsuit, including but not limited to all claims under the FLSA, the EPA, and any other state, federal, or local law related to the payment of wages, overtime, minimum wage, equal pay, discrimination in compensation, along with all claims for costs, attorneys' fees, expenses, liquidated damages, punitive damages, compensatory damages, interest, or any other claims or benefits against the Released Parties.

"Released Parties" means Defendant, Evernest Holdings, LLC d/b/a Evernest, LLC, and its past, present and/or future, direct and/or indirect, officers, directors, members, managers, agents, employees, representatives, attorneys, insurers, partners, investors, shareholders, administrators, predecessors, successors, and assigns.

*Id.* at ¶ I.O–P.

### G. Settlement Administration Timeline

Within ten (10) days of the Effective Date,[2] Defendant will tender the Settlement Checks to the Collective Counsel on behalf of the Settlement Members. *Id.* at ¶ III.D. Collective Counsel will mail the Settlement Members their Settlement Checks, together with a letter reminding them they have ninety (90) days to cash or otherwise negotiate their check. After the expiration of ninety (90) days, the Settlement Checks will not be valid or negotiable. *Id.* at ¶ III.C.iv.

---

[2] "Effective Date" means the first date when all of the following events have occurred: (i) counsel for Defendant is in physical receipt of a fully executed copy of this Settlement Agreement, and a completed and a signed IRS Form W-9 from Anderson Alexander, PLLC and Settlement Members; (ii) Named Plaintiffs have filed with the Court either a motion for approval of the settlement or a stipulation of dismissal in accordance with the terms of the Settlement Agreement, seeking approval of this settlement (including attorneys' fees and costs), and (iii) the Court has entered a final order approving the Settlement Agreement (including attorneys' fees and costs) and/or dismissing the Action with prejudice. *See* Exhibit 1, ¶ I.J.

### III.   Argument & Authority

"Congress enacted the FLSA in 1938 with the goal of 'protect[ing] all covered workers from substandard wages and oppressive working hours.' Among other requirements, the FLSA obligates employers to compensate employees for hours in excess of 40 per week at a rate of 1½ times the employees' regular wages." *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 147 (2012) (quoting *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981)); *see also* 29 U.S.C. §§ 202, 207(a). The FLSA was designed "to ensure that each employee covered by the Act would receive '[a] fair day's pay for a fair day's work' and would be protected from 'the evil of 'overwork' as well as 'underpay.'" *Barrentine*, 450 U.S. at 739 (emphasis in original). Congress thus sought to protect, "the public's independent interest in assuring that employees' wages are fair and thus do not endanger 'the national health and well-being.'" *Kaikkonen v. Ascent Hosp. Mgmt. Co.*, No. 5:18-CV-01150-MHH, 2019 WL 5291296, at *2 (N.D. Ala. Oct. 18, 2019) (quoting *Stalnaker v. Novar Corp.*, 293 F. Supp. 2d 1260, 1264 (M.D. Ala. 2003) (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945)).

If an employer is found to have violated the FLSA, it must remit to the employee all unpaid wages or compensation, liquidated damages in an amount equal to the unpaid wages, a reasonable attorney's fee, and costs. *Id.*; 29 U.S.C. § 216(b). "FLSA provisions are mandatory; the 'provisions are not subject to negotiation or bargaining between employer and employee.'" *Silva v. Miller*, 307 Fed. Appx. 349, 351 (11th Cir. 2009) (quoting *Lynn's Food Stores, Inc. v. U.S. ex rel. U.S. Dep't of Labor*, 679 F.2d 1350, 1352

(11th Cir. 1982)); *see also Brooklyn*, 324 U.S. at 707. "Consequently, parties may settle an FLSA claim for unpaid wages only if there is a *bona fide* dispute relating to a material issue concerning the claim." *Kaikkonen*, 2019 WL 5291296, at *2.

To resolve a claim for unpaid wages, the parties must "present to the district court a proposed settlement, [and] the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food*, 679 F.2d at 1352; *see also Hogan*, 821 F. Supp. 2d at 1281–82. "[T]he parties requesting review of an FLSA compromise must provide enough information for the court to examine the *bona fides* of the dispute." *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010). The information that the parties provide should enable the Court "to ensure that employees have received all uncontested wages due and that they have received a fair deal regarding any additional amount that remains in controversy." *Hogan*, 821 F. Supp. 2d at 1282. "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute," then a court may approve a settlement. *Lynn's Food*, 679 F.2d at 1354; see also *Silva*, 307 Fed. App'x at 351 (emphasizing that a proposed settlement must be fair and reasonable).

### A.   A *Bona Fide* Dispute Exists Between the Parties

Here, Settlement Members bore the job titles of "Business Development Managers" or "Property Managers" and were classified by Defendant as exempt employees and paid a salary irrespective of the number of hours they worked during

the work week. *See* ECF No. 1. Settlement Members alleged they were misclassified as exempt employees and assert they were owed overtime for all time worked over forty hours in a week.

Defendant has at all times maintained that it properly classified Settlement Members as exempt employees under the Administrative, Executive, or Outside Sales exemptions found in the FLSA.[3] *See* ECF No. 11; 29 U.S.C. § 213(a)(1). Defendant also challenged the number of hours the Settlement Members claimed they worked. Defendant served written discovery on each Settlement Member and also took their depositions. Based on the facts as developed in this litigation, Defendant believed it would prevail on its dispositive motions, absent settlement.

While Settlement Members remain confident in their claims, they believe that there are close questions of fact regarding the applicability of the exemptions that would ultimately be tried to a jury. Ultimately, considering the risks of loss and the expenses of continued litigation, the Parties agreed to resolve this matter according to the terms of the Agreement before this Court.

### B. Arms-Length Negotiations

The Agreement was reached between the Parties after extensive conferrals regarding the claims at issue and after exchanging multiple demands and counteroffers. While Collective Counsel and Defendant's counsel disagree about the validity of

---

[3] Briefing on Plaintiffs' Motion for Conditional Certification addressed many of the disputed fact questions at issue in this lawsuit. *See* ECF Nos. 42, 47, and 50.

Plaintiffs' claims, and whether they were owed any money at all, Collective Counsel and Defendant's counsel were able to negotiate the fully executed Agreement currently pending before the Court for approval..

### C.    Settlement Sums to Settlement Members

In this case, there were no "undisputed" wages owed to any Settlement Member. Defendant maintained that the Settlement Members were not owed *any* overtime compensation because they had been properly classified as exempt. Settlement Members, on the other hand, maintained they were entitled to overtime for all hours over forty (40) in a workweek, and alleged that they worked up to twenty (20) hours a week of overtime.

The individual Settlement Shares were calculated based on the number of weeks worked during the relevant time period, the number of overtime hours alleged by each Settlement Member, and the facts obtained during discovery. Each Settlement Member has executed the Agreement and agreed to the distribution of the Gross Settlement Amount.

### D.    Attorneys' Fees and Litigation Expenses

The "FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Johnsey v. BAL TK, L.L.C.*, No. 2:18-CV-00643-MHH, 2020 WL 2084639, at *3 (N.D. Ala. Apr. 30, 2020) (approving attorneys' fees and expenses of $19,000.00 and payment

to plaintiffs of $5,666.71) (citing *Lynn's Food*, 679 F.2d at 1352); *see also Briggins v. Elwood TRI, Inc.*, 3 F. Supp. 3d 1277, 1290 (N.D. Ala. 2014). To analyze the reasonableness of a requested fee, the court must multiply the number of hours reasonably expended on the case by a reasonable hourly rate, resulting in a "lodestar" amount. *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994). Here, Collective Counsel seek to recover $14,000.00 in fees and $9,602.47 in litigation expenses for a total amount of $23,602.47. This amount is well below Collective Counsel's lodestar of $100,968.75 in this matter, and is fair and reasonable. *See* Declaration of Clif Alexander, attached as Exhibit 2.

## IV.   Conclusion

Because the Agreement was reached in good faith, arm's-length negotiations and is a fair and reasonable resolution of a *bona fide* dispute, Plaintiffs ask this Court to approve the Agreement and dismiss this lawsuit with prejudice.

Date: October 7, 2025                                  Respectfully submitted,

                                                      **ANDERSON ALEXANDER, PLLC**

By:   /s/ *Blayne Fisher*
       **Blayne Fisher**
       Blayne@a2xlaw.com
       Texas Bar No. 24090099
       **Lauren Braddy**
       Lauren@a2xlaw.com
       Texas Bar No. 24071993
       101 N. Shoreline Blvd., Ste. 610
       Corpus Christi, Texas 78401
       Telephone: (361) 452-1279
       Facsimile: (361) 452-1284


**HARDIN & HUGHES, LLP**

By:   /s/ *David A. Hughes*
       **David A. Hughes** (ASB-3923-U82D)
       dhughes@hardinhughes.com
       2121 14th Street
       Tuscaloosa, Alabama 35401
       Telephone: (205) 523-0463
       Facsimile: (205) 344-6188


***Attorneys in Charge for Plaintiff and Opt-In Plaintiffs***

## **CERTIFICATE OF CONFERENCE**

I hereby certify that I have conferred with Defendant's counsel of record and Defendant is not opposed to the filing of this motion or the relief requested herein.

*/s/ Blayne Fisher*
Blayne Fisher

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 7, 2025, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Alabama, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Blayne Fisher*
Blayne Fisher
